IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRICKLAYERS & ALLIED | : | |
| CRAFTWORKERS LOCAL 1 OF PA/DE, | : | |
| ET AL. | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 09-3935 |
| WATERCONTROL SERVICES, INC., | : | |
| ET AL. | : | |

**SURRICK, J.**                                                                                            **JULY  30 , 2012**

### MEMORANDUM

Presently before the Court is Plaintiffs' Amended Motion for Default Judgment. (ECF No. 6.)[1] For the following reasons, Plaintiffs' Motion will be granted.

**I.    BACKGROUND**

Plaintiffs brought this action against Defendants WaterControl Services, Inc. ("WaterControl") and Edward Creedon, alleging among other things, violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq*., and the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151, *et seq*. (Compl., ECF No. 1.)[2] Plaintiffs seek

---

[1] Plaintiffs refer to the Motion as an "Amended Motion." However, the docket does not reflect that a prior motion for default judgment was ever filed by Plaintiffs.

[2] Plaintiffs include (i) Bricklayers and Allied Craftworkers Local 1 of PA/DE ("Plaintiff Union"), a labor organization, (ii) Bricklayers and Allied Craftworkers Local 1 of PA/DE Health & Welfare Fund ("Health and Welfare Fund"), an employee welfare plan, (iii) Bricklayers and Allied Craftworkers Local 1 of PA/DE Joint Apprenticeship and Training Fund ("Training Fund"), an employee welfare plan, (iv) Bricklayers and Allied Craftworkers Local 1 of PA/DE Vacation Fund ("Vacation Fund"), an employee welfare plan, (v) Bricklayers and Allied Craftworkers Local 35 of PA Annuity Fund ("Local 35 Annuity Fund," and together with the Health and Welfare Fund, the Training Fund, the Vacation Fund, and the Local 35 Annuity Fund, the "Plaintiff Funds"), an employee welfare plan, and (vi) Tim Sheldon, Administrative Agent for the Plaintiff Funds. (Compl. ¶¶ 1-6.)

to recover unpaid employee benefit fund contributions, interest, liquidated damages, attorney's fees and costs from Defendants and to compel an audit of Defendants' payroll.  (Compl.)

Defendant WaterControl and Plaintiff Union entered into a Collective Bargaining Agreement ("CBA") on October 19, 2005.  (Compl. ¶ 12; Certification ¶ 18, ECF No. 6; Certification Am. Ex. E ("CBA"), ECF No. 7.)[3]  Defendant Creedon is the President, Chief Executive Officer ("CEO"), and owner of WaterControl.  (Compl. ¶ 8.)  Creedon signed the CBA on behalf of WaterControl.  The CBA requires WaterControl, as the "Employer," to make employee benefit fund contributions to Plaintiff Funds.  (Compl. ¶ 12.)  Specifically, the CBA obligates WaterControl "to make hourly contributions at set rates to the benefits funds for each hour worked" by its employees.  (Pls.' Mem. 4, ECF No. 6.)  WaterControl is required to remit these contributions no later than the fifteenth day of each month.  (Certification ¶ 9; *see also* CBA § 5.B.1 ("Contributions shall be remitted and received . . . not later than the 15th day of the month following the month in which the work was performed.").)  In addition, the CBA requires WaterControl to deduct union dues and political action committee contributions from employees, upon the employee's authorization, and turn over such dues and contributions to Plaintiff BAC Union on a monthly basis.  (Compl. ¶ 12; Pls.' Mem. 4.)  WaterControl is also obligated under the CBA to remit employer contribution reports no later than the fifteenth day of each month. (Compl. ¶ 16; CBA § 5.B.1)  The contribution reports advise Plaintiffs of the hours worked by each WaterControl union employee and calculate the monthly benefit fund contributions based upon the number of hours worked.  (*See* Certification Ex. A.)

---

[3] Plaintiffs attached only excerpts of the CBA to the Motion.  Upon the Court's request, on April 12, 2012, Plaintiffs filed the entire CBA as an Amended Exhibit E to the Certification. (*See* ECF No. 7.)

In the event that WaterControl fails to make the required benefit fund contributions when due, the CBA provides that damages may be assessed against WaterControl. (CBA § 5.B.3.) Damages include interest, liquidated damages, attorneys fees and costs associated with collection. (*Id.*) Article 5 of the CBA states:

> In the event that an Employer fails to remit contributions when due, the Employer shall be assessed and required to pay interest at the rate of 12% per annum plus liquidated damages in the amount of 10% of the principal amount due. In the event that delinquent contributions are referred to an attorney for collection, the Employer shall also be assessed and required to pay all attorney's fees and costs of collection.

(CBA §5.B.3.)[4]

Plaintiffs state that Defendants failed to make timely benefit fund contributions for the following periods of time: January 2007 through December 2007; March 2008 through September 2008; and November 2008 through January 2011. (Certification ¶ 7.) Plaintiffs calculate that Defendants owe interest on these delinquent contributions in the amount of $26,623.87 (*id.* at ¶ 13) and liquidated damages in the amount of $165,586.27 (*id.* at ¶ 15).[5] In addition, Defendants have failed to make principal benefit fund contributions and remit the required contribution reports for the period of February 2011 through April 2011. (Certification ¶ 7.) Plaintiffs claim that, in addition to the principal contributions, Defendants owe interest and liquidated damages for this three-month period, but that such amounts are presently

---

[4] "Employer" refers to WaterControl. The Complaint states that WaterControl is an "employer" within the meaning of section 2(2) of the NLRA, 29 U.S.C. § 152(2) and section 3(5) of ERISA, 29 U.S.C. § 1002(5). (Compl. ¶ 7.)

[5] In the Complaint, Plaintiffs allege that delinquent contributions were made for the following months: January 2007 through December 2007; March 2008 through September 2008; and November 2008 through April 2009. (Compl. ¶ 14.) The Certification states that in addition to these months, WaterControl also made delinquent Benefit Fund Payments for the months of May 2009 through January 2011. (Certification ¶ 7.)

undeterminable since Defendants have failed to remit contribution reports for these months. (*Id.* at ¶¶ 14, 16.) Plaintiffs also claim that Defendants owe attorney's fees and costs as a result of Plaintiffs having to file a lawsuit to attempt to recover the amounts owed.

The CBA also provides Plaintiffs with the right to audit WaterControl's records. Specifically, Plaintiffs may, "at any reasonable time, [ ] examine any and/or all records of the Employer to establish that all payments required under the terms of this Agreement have been paid to the respective Funds." (CBA § 5.E.) In addition, the CBA incorporates a separate Agreement and Declaration of Trust for each covered benefit fund. (*See* CBA § 5.B.4.) Plaintiffs attach as an exhibit to the Certification an "Amendment 2 to Agreement and Declaration of Trust" for Plaintiff BAC Health & Welfare Fund. According to Amendment 2, owners, principals or officers of employers, such as WaterControl, are personally liable for "breach[es] of fiduciary duties with respect to the disposition of [] contributions as assets of the Fund." (Certification ¶ 19 & Ex. G at ¶ 2.)[6]

On August 28, 2009, Plaintiffs filed a Complaint, asserting the following causes of action: (i) breach of contract under NLRA § 301 against WaterControl (Count I); (ii) breach of contract under ERISA § 515 against WaterControl (Count II); (iii) breach of contract under

---

[6] Paragraph 2 of the Amendment states:

Nonpayment of contributions beyond the date on which they are due shall constitute a breach of the Employer's fiduciary obligations with respect to Fund assets held in trust as set forth in Section 7.1. In any action to recover, compel and enforce the payment of contributions as set forth in Section 7.2, the Trustees shall have the authority and right to seek personal liability against an owner, principal, or officer of an Employer for breach of fiduciary duties with respect to the disposition of such contributions as assets of the Fund.

(Certification Ex. G. at ¶ 2.)

undeterminable since Defendants have failed to remit contribution reports for these months. (*Id.* at ¶¶ 14, 16.) Plaintiffs also claim that Defendants owe attorney's fees and costs as a result of Plaintiffs having to file a lawsuit to attempt to recover the amounts owed.

The CBA also provides Plaintiffs with the right to audit WaterControl's records. Specifically, Plaintiffs may, "at any reasonable time, [ ] examine any and/or all records of the Employer to establish that all payments required under the terms of this Agreement have been paid to the respective Funds." (CBA § 5.E.) In addition, the CBA incorporates a separate Agreement and Declaration of Trust for each covered benefit fund. (*See* CBA § 5.B.4.) Plaintiffs attach as an exhibit to the Certification an "Amendment 2 to Agreement and Declaration of Trust" for Plaintiff BAC Health & Welfare Fund. According to Amendment 2, owners, principals or officers of employers, such as WaterControl, are personally liable for "breach[es] of fiduciary duties with respect to the disposition of [] contributions as assets of the Fund." (Certification ¶ 19 & Ex. G at ¶ 2.)[6]

On August 28, 2009, Plaintiffs filed a Complaint, asserting the following causes of action: (i) breach of contract under NLRA § 301 against WaterControl (Count I); (ii) breach of contract under ERISA § 515 against WaterControl (Count II); (iii) breach of contract under

---

[6] Paragraph 2 of the Amendment states:

Nonpayment of contributions beyond the date on which they are due shall constitute a breach of the Employer's fiduciary obligations with respect to Fund assets held in trust as set forth in Section 7.1. In any action to recover, compel and enforce the payment of contributions as set forth in Section 7.2, the Trustees shall have the authority and right to seek personal liability against an owner, principal, or officer of an Employer for breach of fiduciary duties with respect to the disposition of such contributions as assets of the Fund.

(Certification Ex. G. at ¶ 2.)

NLRA § 301 and breach of fiduciary duties under ERISA against Creedon (Count III); and common law conversion against Creedon (Count IV). (Compl.) Defendants were each served with a Summons and Complaint on September 8, 2009. (Certification ¶ 2; *see also* Affs. of Service, ECF Nos. 2, 3.) The record shows that, even though Defendants were properly served with the Complaint, they have not appeared, answered, moved or otherwise responded to the pleading.

On October 12, 2009, Plaintiffs filed a Request for Entry of Default against both Defendants. (ECF No. 4.) Default was entered against both Defendants by the Clerk of Court on October 13, 2009. On May 5, 2011, Plaintiffs' counsel sent Defendants a letter via certified and first class mail. (Certification ¶ 11 & Ex. D.) The letter advises Defendants that interest and liquidated damages continue to accrue on their delinquent contributions. (Certification Ex. D.) In the letter, Plaintiff's counsel attempts to resolve the dispute by offering to waive the liquidated damages that had accrued ($165,586.27) on the condition that Defendants pay the outstanding interest ($28,483,87). Defendants never responded to the letter or to counsel's offer to settle the matter. (Certification ¶ 11.)

On May 27, 2011, Plaintiffs filed a Motion for Default Judgment (Pls.' Mot.), together with a Certification of Counsel (Certification), and Memorandum of Law (Pl.'s Mem.). (ECF No. 6.) To date, Defendants have failed to answer, plead or otherwise defend this action.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) provides that a district court may enter default judgment against a party when default has been entered by the Clerk of Court. Fed. R. Civ. P. 55(b)(2). The entry of a default by the Clerk of Court, however, does not automatically entitle

the non-defaulting party to a default judgment. *D'Onofrio v. Il Mattino*, 430 F. Supp. 2d 431, 437 (E.D. Pa. 2006) (citing *Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005); *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984)).  Judgment by default is generally disfavored. *Budget Blinds, Inc. v. White*, 536 F.3d 244, 258 (3d Cir. 2008).  Nevertheless, the entry of default judgment is a matter within the sound discretion of the district court. *Hritz*, 732 F.2d at 1180. Courts consider three factors when determining whether to enter default judgment against a defendant: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).  If a default judgment is entered, "the factual allegations of the complaint, except those relating to damages, will be taken as true." *Comdyne I, Inc. v. Corbin, Jr.*, 908 F.2d 1142, 1149 (3d Cir. 1999) (citing 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2688 at 444 (2d ed. 1983)).

## III. DISCUSSION

Before deciding whether a default judgment is appropriate in this case, we must determine whether the Complaint establishes a legitimate cause of action against each of the Defendants. *Jimenez v. Rosenbaum-Cunningham, Inc.*, No. 07-1066, 2010 U.S. Dist. LEXIS 31664, at *14 (E.D. Pa. Mar. 31, 2010).

### A. Liability of WaterControl

ERISA demands that employers who make contributions under a collective bargaining agreement do so in accordance with that agreement. *See* 29 U.S.C. § 1145.[7]  Similarly, the

---

[7] ERISA also permits the labor organization to collect from employers the delinquent contributions, together with interest, liquidated damages, attorneys fees, costs, and any other equitable relief that the court deems appropriate. *See* 29 U.S.C. § 1132(g)(2).

NLRA permits labor organizations to enforce the terms of collective bargaining agreements in federal court. *See* 29 U.S.C. § 185. Here, the CBA requires WaterControl to make employee benefit fund contributions to Plaintiff Funds for each hour worked by WaterControl union employees. The CBA also requires WaterControl to submit contribution reports. Both the employee benefit fund contributions and the contribution reports are to be remitted by the fifteenth day of each month. If employee benefit fund contributions are delinquent, the CBA provides that WaterControl is required to pay twelve percent per annum plus liquidated damages in the amount of ten percent of the principal amount due. If delinquent payments are referred to an attorney for collection, the CBA requires that WaterControl pay attorney's fees and costs of collection.

The facts alleged in the Complaint and Certification demonstrate that WaterControl failed to make timely benefit fund contributions during the following time periods: January 2007 through December 2007; March 2008 through September 2008; and November 2008 through January 2011. As a result of these delinquent payments, WaterControl is obligated under the CBA to pay Plaintiffs accrued interest, liquidated damages, attorneys fees and costs. The record also demonstrates that WaterControl failed to make principal benefit fund contributions and remit contribution reports for the months of February, March and April, 2011. As a result of this failure, WaterControl is obligated to make the principal contributions for these months and pay the accrued interest, liquidated damages, attorneys fees and costs.

### B.  Liability of Creedon

Plaintiffs also seek to hold Creedon individually liable for its alleged damages. Plaintiffs allege that Creedon is liable as a fiduciary under ERISA and under Amendment 2 to the

Agreement and Declaration of Trust for BAC Health & Welfare Fund.

Amendment 2 to the Agreement and Declaration of Trust provides that "nonpayment of contributions beyond the date on which they are due . . . constitutes a breach of the Employer's fiduciary obligations with respect to Fund assets." (Certification Ex. G. at ¶ 2.) Amendment 2 further states that "Trustees shall have the authority and right to seek personal liability against an owner, principal, or officer of an Employer for breach of fiduciary duties with respect to disposition of such contributions as assets of the Fund." (*Id.*) Plaintiffs allege that Creedon is liable as a fiduciary under Amendment 2 on account of his role as the owner, CEO and President of WaterControl. However, Plaintiffs do not provide a copy of any Agreement and Declaration of Trust to which Amendment 2 allegedly applies. Moreover, Amendment 2 purports to only amend the Agreement and Declaration of Trust with respect to Plaintiff BAC Health & Welfare Fund. The Health & Welfare Fund is only one of the benefit funds to which Defendants make employee benefit fund contributions. Plaintiffs have not alleged any facts, nor provided any evidence establishing, that the Agreement and Declaration of Trust documents of other funds were similarly amended to extend liability to Employer's owners, principals and officers.

Creedon may still be found liable as a fiduciary under ERISA. *See* 29 U.S.C. § 1109(a).[8]

---

[8] ERISA § 1109(a) states:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a).

Under ERISA, a person is a fiduciary with respect to a plan if "he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets."  29 U.S.C. § 1002(21)(a)(i).  A two-part test is used to determine whether an individual is liable as a fiduciary.  *Teamsters Health & Welfare Fund v. World Transp., Inc.*, 241 F. Supp. 2d 499, 505 (E.D. Pa. 2003); *Trs. of the Nat'l Elevator Indus. Pension, Health, Benefit, Educ., Elevator Indus. Work Pres. Funds v. Century Elevator, Inc.*, No. 11-3792, 2011 U.S. Dist. LEXIS 116990, at *9 (E.D. Pa. Oct. 11, 2011).  To be liable as a fiduciary under ERISA, the court must determine (1) that unpaid contributions were "plan assets," and (2) that the individual exercised discretionary control or authority of such assets.  *Teamsters Health & Welfare Fund*, 241 F. Supp. 2d at 505.  The Complaint alleges sufficient facts as to both prongs of this test.

### 1.   Plan Assets

"Plan Assets" are defined in the ERISA regulations as "amounts (other than union dues) that a participant . . . pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contributions . . . to the plan, as of the earliest date on which such contributions . . . can reasonably be segregated from the employer's general assets."  29 C.F.R. § 2510.3-102.  WaterControl is obligated under the CBA to deduct wages at an hourly contribution rate from its union employees.  WaterControl is further obligated to make those contributions to Plaintiff Funds.  The CBA even states that these contributions constitute fund assets.  (*See* CBA § 5.B.1 ("Contributions required under this Agreement shall become assets of each Fund as of the date on which they are due.").)  Accordingly, the record supports a finding that the unpaid contributions are plan assets.  *See Century Elevator, Inc.*, 2011 U.S. Dist. LEXIS 116990, at *10

9

(finding that unpaid contributions constituted plan assets where language in CBA stated that title of contribution payments vested in and remained with fund trustees when contribution payments became due).

        2.     *Authority or Control*

The record also supports a finding that Creedon exercises discretionary authority and control over the fund assets. The Complaint alleges that at all relevant times, Creedon served as the President, CEO and owner of WaterControl. (Compl. ¶ 27.) In this capacity, Creedon directed WaterControl's financial operations and oversaw its business activities. (*Id.*) The Complaint further alleges that Creedon exercised power and control over the day-to-day financial and business affairs of WaterControl, including the issuance of payroll checks to employees, the deduction of dues and the distribution of portions of employees' compensation to Plaintiff Funds. (*Id.* at ¶ 28.) Creedon signed the CBA on behalf of WaterControl. He often signed the monthly contribution reports submitted to Plaintiffs. (*See* Certification Ex. A.) It is alleged that Creedon failed to make benefit fund contributions to Plaintiffs and failed to make other contributions in a timely manner. (Compl. ¶ 29.) In doing so, Creedon "wrongfully deducted Union dues and other contributions to be held in trust for [Plaintiffs] and converted them to the improper use of the company." (*Id.*)

Based on the foregoing, it is clear that Creedon exercised authority and control over disposition of the fund assets. *See Trs. of the Nat'l Elevator Indus. Pension, Health Benefit, Educ., Elevator Indus. Work Pres. Funds, Elevator Constructors Annuity & 401 Ret. Plan v. Gateway Elevator, Inc.*, No. 09-4206, 2011 U.S. Dist. LEXIS 65719, at *17-19 (E.D. Pa. June 21, 2011) (finding that the defendant exercised discretionary authority and control over plan

assets where he was responsible for authorizing contribution payments, signed checks, was the president, sole board member, and owner of the employer, and was the signatory of the CBA); *Century Elevator, Inc.*, 2011 U.S. Dist. LEXIS 116990, at *12 (finding that defendant exercised authority and control over employer where he was the president, owner and officer of employer, signed the CBA, exercised control over payroll, determined the amount of monthly contributions, and failed to remit certain monthly contributions).

Accordingly, we find that Creedon is a fiduciary under ERISA and breached his duties to Plaintiffs by failing to make timely benefit fund contributions.

      **C.**     **Default Judgment**

Having determined that the Complaint establishes a legitimate cause of action against each of the Defendants, we next consider whether entering default judgment is appropriate. An entry of default under Rule 55(a) of the Federal Rules of Civil Procedure must precede an entry of default judgment under Rule 55(b)(2). *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 521 n.1 (3d Cir. 2006). Defaults against WaterControl and Creedon were properly entered by the Clerk of Court on October 13, 2009. As noted above, courts generally consider three factors in determining whether entry of default judgment is appropriate: (i) prejudice to plaintiff if default is denied; (ii) whether defendant has a meritorious defense; and (iii) whether defendant's conduct is culpable. *Chamberlain*, 210 F.3d at 164.

We are satisfied that entry of default judgement against WaterControl and Creedon is warranted. The factors clearly weigh in favor of granting default judgement against both Defendants. First, there is a risk of prejudice to the beneficiaries of Plaintiff Funds if Defendants' contributions are not made, or not made on a timely basis. This action has been

pending for almost three years. Plaintiffs have not received benefit fund contributions for the months of February, March and April, 2011. Plaintiffs have suffered, and will continue to suffer prejudice in the form of economic loss as a result of this lost investment income. On this basis, we conclude that Plaintiffs will suffer prejudice if the requested default judgment is denied. *See Carpenter Health & Welfare Fund of Phila. v. Naglak Design*, No. 94-2829, 1995 U.S. Dist. LEXIS 566, at *8 (E.D. Pa. Jan. 18, 1995) (finding that plaintiffs will be prejudiced without entry of default judgment since employer's failure to make fund contributions caused adverse impact and economic loss to funds).

Second, Defendants have not asserted any litigable defense, either by answering the Complaint or filing a response to the instant Motion. *See Kauffman v. Specialty Flooring Sys., Inc.*, No. 11-1746, 2012 U.S. Dist. LEXIS 1644, at *7 (M.D. Pa. Jan. 6, 2012) (finding that factors weigh in favor of entering default where defendant fails to assert any defense); *Trs. of the Nat'l Elevator Indus. Pension Plan v. Universal Elevator Corp.*, No. 11-3381, 2011 U.S. Dist. LEXIS 127613, at *7 (E.D. Pa. Nov. 3, 2011) (interpreting "Defendants' silence as proof that they have no litigable defense"). Third, Defendants' delay in participating in this litigation is without explanation. The record shows that Defendants were duly served with the Complaint almost three years ago. Plaintiffs repeatedly put Defendants on notice of their delinquent benefit fund contributions, including the accrued interest and liquidated damages for which they were liable under the CBA. In addition, Plaintiffs' counsel sent Defendants a certified letter, notifying them of the outstanding amounts due and offering to settle. Despite being served with the pleadings and repeatedly being put on notice, Defendants have wholly ignored this litigation and have not appeared or responded to Plaintiffs' allegations in any fashion. We are compelled to

conclude that Defendants' conduct is culpable. *See Kauffman*, 2012 U.S. Dist. LEXIS 1644, at *7 (finding defendant's conduct culpable where it "neither engaged in the litigation process nor offered any reasons for its failure to appear").

Based on the foregoing, we conclude that entry of a default judgment against WaterControl and Creedon is appropriate.

### D.   Damages

We must next determine whether the amount of damages requested by Plaintiffs is sufficiently alleged. While default judgment establishes the defaulting party's liability for the allegations in the complaint, it "does not establish liability for the amount of damages claimed by the plaintiff." *Local No. 1, Int'l Union of Elevator Constructors v. Lift-Tech Elevator Serv., LLC*, No. 08-6248, 2009 U.S. Dist. LEXIS 62442, at *3 (D.N.J. July 21, 2009). "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).

Plaintiffs request the total amount of $194,327.64, which includes the following items. Plaintiffs request $26,623.87 for interest on delinquent benefit fund contributions for the months of January 2007 through December 2007, March 2008 through September 2008 and November 2008 through January 2011. Plaintiffs request an amount of $165,586.27, which represents liquidated damages for these months. Plaintiffs submit detailed spreadsheets summarizing the monthly contribution reports and itemizing calculations of interest and liquidated damages for the untimely benefit fund contributions. (*See* Certification Exs. B, C.) We find that Plaintiffs have offered sufficient proof that the amounts requested are properly recoverable. And Plaintiffs

request reimbursement of attorney's fees in the amount of $1,697.50 and costs in the amount of $420.00. Attached to the Certification is a detailed description of the time expended by Plaintiffs' counsel, Elissa B. Katz, Esquire, related to her efforts to recover amounts owed to Plaintiffs under the CBA. (Certification ¶ 20 & Ex. H.) Counsel has spent a total of 9.7 hours in connection with this matter, including telephone calls, legal research, document review, correspondence and drafting of pleadings. (*Id.*) Counsel charges a rate of $175.00 per hour. (*Id.* at ¶ 21.) We find the amount of hours expended (9.7) and the rate to be reasonable. *See, e.g., Gusler v. Commercial Spray Installations*, No. 11-2039, 2012 U.S. Dist. LEXIS 8199, at *9 (E.D. Pa. Jan. 23, 2012) (approving rate of $210 per hour for work performed in seeking default judgment against employer for unpaid employee benefit plan contributions). Also attached to the Certification are invoices and receipts representing the costs for filing and serving the Complaint. (Certification ¶ 22 & Ex. I.) These costs are also recoverable by Plaintiffs.

For the period of February 2011 through April 2011, Plaintiffs request judgment in an amount to be later determined. Since Defendants have failed to remit monthly contribution reports for these months, the principal amount and damages owed by Defendants is not ascertainable. Accordingly, we will order Defendants to remit both the principal amounts owed and monthly contribution reports for these months. Plaintiffs may thereafter calculate the interest and liquidated damages owed for these months and seek payment of these amounts from Defendant.

Finally, we will permit an authorized representative of Plaintiffs to access WaterControl's payroll records in order to conduct an audit and accounting and determine whether there are additional benefit fund contribution amounts due and owing. The CBA explicitly provides for

Plaintiffs' right to audit WaterControl's payroll records. (*See* CBA § 5.E. ("The Board of trustees, or their authorized agents, shall have the right, at any reasonable time, to examine any and/or all records of the Employer to establish that all payments required under the terms of this Agreement have been paid to the respective Funds.").)

We are satisfied that Plaintiffs have sufficiently supported their claim and that the categories of damages are properly alleged and recoverable under the CBA.[9] Accordingly, judgment will be entered against Defendants jointly and severally in the amount of $194,327.64.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Default Judgment is granted.

An appropriate Order follows.

**BY THE COURT:**

*[signature]*

**R. BARCLAY SURRICK, J.**

---

[9] Some of the damages requested by Plaintiffs represent unpaid benefit fund contributions, interest and liquidated damages that were incurred after the Complaint was filed. Plaintiffs "may still seek interest and liquidated damages associated with contributions untimely remitted after the commencement of a lawsuit." *Trs. of the Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 140 F. Supp. 2d 447, 456 (E.D. Pa. 2001); *see also Carpenters Health & Welfare Fund of Phila. & Vicinity v. Building Tech, Inc.*, 747 F. Supp. 288, 296-97 (E.D. Pa. 1990) (allowing plaintiffs to recover interest and liquidated damages for delinquent contributions that became due after the complaint was filed).